IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ABE L.-S.,[1]

    Plaintiff,

vs.

Commissioner of Social Security,[2]

    Defendant.

Case No. 3:17-cv-00703-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Abe. L. S. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration ("SSA") is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to Defendant only as Commissioner of Social Security.

PAGE 1 – OPINION AND ORDER

of the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

On June 7, 2013, plaintiff filed an application for DIB that alleged disability since December 31, 2007. Tr. 19, 87, 223–24. On June 10, 2013, plaintiff filed an application for SSI that also alleged disability since December 31, 2007. Tr. 19, 87, 225–26. Plaintiff based his request for benefits on autism spectrum disorder and depression. Tr. 87. The application was denied initially and again upon reconsideration. Tr. 147–54, 159–64. Following a hearing, an Administrative Law Judge ("ALJ") found plaintiff not disabled in a written decision dated January 4, 2016. Tr. 19–41. The Appeals Council denied review, and plaintiff subsequently filed a complaint in this Court. Tr. 1–4.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision so long as 1) it is based on proper legal standards and 2) its findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The district court reviews the record as a whole, and must weigh both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If evidence presents the possibility for multiple interpretations and the Commissioner's decision is rational, the decision must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 31, 2007. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found that plaintiff had the following severe impairments: personality disorder, attention deficit hyperactivity disorder (ADHD), and fibromyalgia. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ found that plaintiff's impairments, whether considered singly or combination, did not meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 21–22; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except that plaintiff could only occasionally climb ladders, ropes, or scaffolds; could only understand and remember simple instructions; only has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks; and could only have occasional brief, superficial interactions with the public and with co-workers. Tr. 23. At step four, the ALJ found that, through the date last insured, plaintiff was unable to perform any of his past relevant work. Tr. 39; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f).

At step five, the ALJ found plaintiff could perform several jobs existing in significant numbers in the national economy. Tr. 39–40; 20 C.F.R. §§ 404.1520(a)(4)(v), (g); *id.* §§ 416.920(a)(4)(v), (g). The ALJ based this decision on plaintiff's age, education, work experience, and RFC, and determined that plaintiff could have performed the requirements of occupations like the following: motel cleaner, mail sorter, and price marker. Tr. 39–40. Accordingly, the ALJ found plaintiff not disabled and denied his application for benefits.

## DISCUSSION

Plaintiff alleges that the ALJ erred by (1) rejecting plaintiff's testimony about the severity of his symptoms and (2) rejecting the medical opinions of Dr. Loudin, Dr. Williams, and Nurse Practitioner Paul. I address each argument in turn.

I. *Plaintiff's Symptom Testimony*

Plaintiff argues the ALJ failed to provide adequate reasons under the "clear and convincing" standard to discredit plaintiff's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). Defendant argues the ALJ's disregard for the testimony is supported by substantial evidence and should be affirmed.

The Ninth Circuit applies a two-step approach when reviewing the ALJ's treatment of a plaintiff's symptom testimony. First, the ALJ evaluates "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1014 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)) (internal quotation marks omitted). Second, "[i]f the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering

specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (internal quotation marks omitted).

In the present case, plaintiff alleged that he was unable to work due to the combination of his physical and mental impairments. Tr. 57. In particular, plaintiff testified that his physical pain makes it difficult to walk and on his worst days he needs to use a wheelchair. Tr. 58. According to plaintiff, he suffers from invasive thoughts that make it difficult for him to concentrate. Tr. 58. He explained the invasive thoughts consist of voices in his head shouting "very bad things." Tr. 58. Plaintiff also reported that he struggles with depression and that he is constantly contemplating suicide. Tr. 58. Additionally, plaintiff testified that he has difficulty with authority, and that he has on multiple occasions lost control of his anger and yelled at his supervisors. Tr. 59.

Ultimately, the ALJ found that plaintiff's "statement concerning the intensity, persistence and limiting effects of these symptoms are not credible." Tr. 24. The ALJ did not find, nor does defendant argue, that plaintiff malingered. Given these facts, the ALJ was required to support the rejection of plaintiff's symptom testimony with specific, clear and convincing reasons.

The ALJ rejected plaintiff's symptom testimony for several reasons, including plaintiff's attempt to apply for two jobs after the alleged onset date, plaintiff's GAF score of 70, the Cooperative Disability Investigations Unit ("CDIU") report, and plaintiff's activities of daily living.

A. *Job Applications*

The ALJ relied on the fact that in 2013 plaintiff had applied for two jobs, finding that such "shows he was able to concentrate and be organized enough to complete applications or submit resumes." Tr. 28. Nevertheless, the record reveals that plaintiff's father filled out and

PAGE 5 – OPINION AND ORDER

submitted the job applications. Tr. 67. Accordingly, this was not a clear and convincing reason for rejecting plaintiff's subjective symptom testimony.

B.  *GAF Score*

The ALJ also relied on plaintiff's 2012 GAF score of 70 as evidence that plaintiff was generally functioning pretty well. Tr. 26. However, the ALJ's reasoning is internally inconsistent because when addressing plaintiff's 2014 GAF score of 45, the ALJ reasoned that "a GAF score is merely a 'snapshot' estimation of the person's symptoms as of that day, and it cannot show if an individual's level of symptoms have lasted for 12 continuous months." Tr. 31. Moreover, the ALJ argued that the GAF scale does not have a direct correlation to the severity of the requirements in the disability analysis. Tr. 31. The ALJ's rejection of the low GAF score was not improper. *See Chism v. Berryhill*, No. 6:16-cv-01106-AC, 2017 WL 6060161, at *7 (D. Or. Dec. 7, 2017) ("[T]he reliability of GAF scores, in evaluating a person's ability to function, is in doubt. The GAF score was omitted from the fifth edition of the Diagnostic & Statistical Manual of Mental Disorders 'for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'") (citing AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 16 ("DSM-V") 5th ed. 2013). Because the ALJ properly rejected the low GAF score on the basis that GAF scores are unreliable and not sufficiently correlated to the disability analysis, her reliance on the high GAF score was not clear and convincing. Therefore, the 2012 GAF score was not a proper justification for rejecting plaintiff's subjective symptom testimony.

C. *CDIU Report*

The ALJ explained that the CDIU investigated plaintiff "due to concerns he was attempting to obtain disability benefits fraudulently and engaging in activities inconsistent with

PAGE 6 – OPINION AND ORDER

his alleged limitations." Tr. 24. The investigating agent interviewed a witness who reported that plaintiff sometimes used a cane or a wheelchair and other times would be "walking or running without any type of assistance." Tr. 24 (internal quotations omitted). The witness had also seen plaintiff jump over a fence. Tr. 24. Moreover, the agent observed plaintiff walking with a backpack on and carrying a cane under his arm. Tr. 24. Plaintiff was not using the cane for balance and was walking with a normal gait. Tr. 24. The agent approached plaintiff and began to question him. Upon the agent's initiation of the conversation, plaintiff "immediately asked if the interview had anything to do with his application for disability benefits." Tr. 24. After the encounter, as plaintiff walked away, he began using the cane and started walking with a "noticeable hitch, which had not been present during the previous surveillance." Tr. 25 (internal quotation omitted). The agent then watched plaintiff climb three steps onto a bus without using the handrail or his cane. Tr. 25.

The ALJ found that the "discrepancy in [plaintiff's] gait before and after his encounter with the agent," along with "his ability to climb on the bus without the assistance of a cane or handrail, his ability to walk without the assistance of a cane or wheelchair, and his ability to jump over a fence undermine" plaintiff's testimony. Tr. 25.

Plaintiff argues that the fact that "an individual saw him jumping a fence one day but using a wheelchair the next is not indicative of an act, but rather indicative of the good days and bad days reflected in his medical records and characteristic of fibromyalgia." Pl.'s Brief at 18. However, plaintiff merely offers a different interpretation of the facts, and where the evidence is subject to more than one interpretation the Commissioner must be affirmed, so long as it is rational. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). Using a wheelchair one day and then jumping over a fence the next could certainly be indicative of putting on an act. As

PAGE 7 – OPINION AND ORDER

such, the ALJ's interpretation was rational. Moreover, plaintiff has failed to provide an explanation for the agent's observation that plaintiff went from walking with a normal gait, without supporting himself with a cane, to walking with a noticeable hitch and leaning on a cane, after conveying his suspicion that the agent was investigating his disability. Such observations provide additional evidence that plaintiff was putting on an act, further supporting the ALJ's finding.

Plaintiff also asserts that the medical records reflect that plaintiff only needs to use a wheelchair four days per week, "indicating that some days he is improved and can walk." Pl.'s Brief at 18. However, plaintiff was able to do more than just walk, he was able to run and jump over fences. Plaintiff offers no explanation for such extreme swings in physical ability occurring over short periods of time, and in any event, the ALJ's interpretation was rational. Thus, the CDIU report provided a valid basis for discounting plaintiff's symptom testimony.

D. *Activities of Daily Living*

The ALJ additionally found that plaintiff's activities of daily living undermined his symptom testimony. Based on a report that plaintiff was "starting to exercise," the ALJ found that "such exercising [was] inconsistent with his allegation of pain so severe that he require[d] a cane, walker, or wheelchair." Tr. 27. Nevertheless, there was no explanation of what the exercises were. Therefore, the ALJ's conclusion that exercise in general conflicted with plaintiff's allegations of pain is not supported by substantial evidence. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (the fact that a claimant can perform therapeutic exercises is not evidence that he is able to perform or sustain such activity in a work setting).

The ALJ also found that plaintiff's workout regime in early 2014, which included pushups, sit ups, and squats, was inconsistent with the physical limitations alleged by plaintiff.

Tr. 29, 842. Moreover, the ALJ relied on the fact that plaintiff's exercise regime included daily walking and on at least one occasion he walked two miles. Tr. 35.

Plaintiff alleges that his pain is only severe during a flare up; however, the day that he walked two miles was during a flare up. Tr. 867. Although plaintiff asserts that he was only able to walk two miles because he had taken his maximum dose of flexeril, the record reflects that he did not take the maximum dose of flexeril on the same day that he walked two miles. Tr. 867.

Plaintiff also argues that the fact he was able to perform a reasonable workout routine on his good days did not undermine his allegation that he was "incapacitated" when he had a pain flare. This ignores the fact that, far from being incapacitated, plaintiff walked two miles during an alleged pain flare. Moreover, plaintiff has failed to account for the extreme variance between the bad days in which he is purportedly wheelchair bound or incapacitated, and the good days in which he is capable of running, jumping fences, doing push-ups, sit-ups, and squats, as well as walking two miles. The ALJ's reliance on plaintiff's ability to perform such strenuous activity was a reasonable basis to reject plaintiff's claims of disabling symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (Even where a claimant's activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Although the Court does not find plaintiff's job applications and GAF score of 70 to be clear and convincing reasons for rejecting plaintiff's symptom testimony, these errors are harmless because the CDIU report and plaintiff's activities of daily living, constitute clear and convincing reasons to discredit plaintiff's symptom testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (the ALJ's overall credibility decision may be

upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.) In sum, the ALJ provided clear and convincing reasons to discount plaintiff's symptom testimony.

II. *Medical Opinion Evidence*

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Loudin, Dr. Williams, and Psychiatric and Mental Health Nurse Practitioner ("PMHNP") Paul. There are three types of medical opinions that have been categorized in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Where there is a conflict between two medical opinions, the ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.* at 1202. Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although the ultimate decision regarding disability is reserved to the Commissioner, the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Non-acceptable medical sources are commonly categorized as "other sources." *Molina*, 674 F.3d at 1111. An ALJ may discount testimony from other sources if the ALJ gives germane reasons for doing so. *Id.* Because nurse practitioners are defined as "other sources," they are not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d) (2013); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1222 (D. Or. 2015). The ALJ need only give

germane reasons to discount such opinions. *Molina*, 674 F.3d at 1111. Germane reasons to discount opinions include inconsistency with an opinion provided by an acceptable medical source and internal inconsistencies within the opinion. *Robinson v. Berryhill*, 690 Fed.Appx. 520, 524 (9th Cir. 2017); *see Molina*, 674 F.3d at 1111–12.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

### A. *Treating Physician Michael Loudin, M.D.*

Dr. Loudin was plaintiff's primary care physician and he treated plaintiff approximately once per month over the course of several years. Tr. 985. Dr. Loudin diagnosed plaintiff with fibromyalgia, ADHD, migraines, obstructive sleep apnea, major depression, obsessive compulsive disorder and autism disorder. Tr. 985. Based on his treatment of plaintiff, Dr. Loudin concluded that plaintiff would experience substantial difficulty working full time at a sedentary or light level of exertion. Tr. 985. Additionally, Dr. Loudin opined that plaintiff would need to work at a reduced pace. Tr. 985. Dr. Loudin noted that during fibromyalgia flares, plaintiff is so limited in his movement that he needs a walker. Tr. 987. As a result of his physical impairments, Dr. Loudin determined that plaintiff could stand and walk for a maximum of two hours per day and sit for a maximum of four hours per day. Tr. 987. Moreover, Dr. Loudin concluded that plaintiff's impairments would cause him to be absent from work three times per month. Tr. 989.

With regard to Dr. Loudin's diagnoses, the ALJ noted that "Dr. Loudin is a medical doctor, not a mental health provider, and he did not provide mental health treatment to [plaintiff]." Tr. 37. While this could be a proper reason for rejecting Dr. Loudin's opinion regarding plaintiff's mental health, it has no bearing on Dr. Loudin's conclusions related to plaintiff's physical well-being, and the functional limitations provided by Dr. Loudin were based on plaintiff's physical impairments. Tr. 985, 987, 989.

The ALJ additionally found that "the objective medical evidence from multiple treatment providers and the objective observations of the CDIU investigator do not support the limitations proposed by Dr. Loudin, and I find his opinion has limited persuasive value." Tr. 38. The ALJ did not explain which medical evidence from which treatment providers contradicted which limitations, or how the CDIU investigator's report contradicted Dr. Loudin's conclusions. Such reasoning is not sufficiently specific to reject Dr. Loudin's opinion. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017); *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

The ALJ also found that Dr. Loudin's opinion was inconsistent with his own treatment notes. However, the ALJ failed to identify any inconsistencies. Again, the ALJ's reasoning was not sufficiently specific. *See Revels*, 874 F.3d at 654; *Lester*, 81 F.3d at 830–31.

The Commissioner makes two *post hoc* arguments purporting to identify inconsistencies between Dr. Loudin's opinion and his treatment notes. First, the Commissioner argues Dr. Loudin's conclusion that plaintiff would have very frequent interference with his concentration and attention was contradicted by a normal mental status examination. However, a single mental status examination is insufficient to reject Dr. Loudin's opinion. *See Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F. 3d at 1205) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated

instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Therefore, the normal mental status examination was not inconsistent with Dr. Loudin's opinion. The Commissioner next argues that Dr. Loudin twice indicated plaintiff's fibromyalgia symptoms were relieved with medication. Tr. 879, 1601. However, Dr. Loudin served as plaintiff's primary care provider for several years, treating plaintiff on more than 20 occasions. Therefore, a vague reference to two instances of some unspecified level of pain relief is insufficient to reject Dr. Loudin's opinion because fibromyalgia must be considered on a "longitudinal record," given that fibromyalgia symptoms "can wax and wane." SSR 12-2p; *see Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F. 3d at 1205). Accordingly, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Loudin's medical opinion.

    B.    *Examining Physician Nadine Williams, M.D.*

Dr. Williams performed an examination of plaintiff on June 7, 2015. Tr. 990–1106. Dr. Williams determined a cane was medically necessary for plaintiff. Tr. 1002. Additionally, Dr. Williams opined that plaintiff could only occasionally reach with both hands. Tr. 1003.

Like with Dr. Loudin's opinion, the ALJ found that Dr. Williams' opinion was inconsistent with the longitudinal record and the CDIU report, but the ALJ again failed to identify any specific facts or evidence in the record that contradicted Dr. Williams' opinion. As discussed above, such reasoning is not sufficiently specific. *See Revels*, 874 F.3d at 654; *Lester*, 81 F.3d at 830–31.

The Commissioner asserts that Dr. Williams' assessment was tainted because during the examination plaintiff incorrectly reported that Dr. Loudin had prescribed a wheelchair; however, the record reflects that Dr. Loudin did indeed prescribe a wheelchair. Tr. 995, 1349.

The Commissioner also notes that the ALJ determined plaintiff had the residual functional capacity to perform light work. Therefore, argues the Commissioner, the ALJ did not completely reject Dr. Williams opinion. However, Dr. Williams limited plaintiff to four hours of standing and walking per day and indicated that plaintiff would need to use a cane while walking and ALJ did not account for such limitations in the RFC. Tr. 23, 1002. Dr. Williams also found that plaintiff could only occasionally reach overhead or forward whereas the ALJ did not include any reaching limitations. Tr. 23, 998. Additionally, Dr. Williams found plaintiff would have limitations working around heights, heavy machinery, chemicals, dust, fumes, and gasses. Tr. 998. The ALJ failed to include any such limitations. Tr. 23. Therefore, the ALJ rejected a number of functional limitations that were assessed by Dr. Williams and failed to provide legally sufficient reasons for doing so.

C. *Treating Nurse Practitioner Sarah Paul, P.M.H.N.P.*

PMHNP Paul treated plaintiff over the course of two months prior to providing her assessment of plaintiff's functional limitations. Tr. 1074. Based on her treatment of plaintiff, PMHNP Paul concluded that he would need to work at a reduced pace if employed full time at a light or sedentary exertional level. Tr. 1077. She determined that plaintiff would be markedly limited in his ability to "[d]eal with normal work stress" and complete a normal workday "without interruptions from his psychologically based symptoms." Tr. 1079–80. Additionally, PMHNP Paul opined that plaintiff would have substantial difficulty getting along with members of the public, supervisors, and co-workers. Tr. 1078. PMHNP Paul also determined that plaintiff's impairments would cause him to be absent from work more than four times per month. Tr. 1078.

The ALJ found that PMHNP Paul's opinion, which was based on encounters during a brief "two-month" period, had only limited persuasive value. Tr. 37. The fact that PMHNP Paul's treating relationship lasted only two months, is not a sufficient reason in and of itself to reject her opinion, particularly considering that the ALJ relied heavily on the opinions of the non-examining physicians, who had no treating relationship with plaintiff.

The ALJ also found that the longitudinal record, including high GAF scores, generally indicated only mild limitations and showed plaintiff to be doing generally well. The ALJ's reliance on the high GAF score was improper because, as discussed above, she rejected the reliability of GAF scores in the context of determining a claimant's functional limitations. Tr. 31. Moreover, the second reason for rejecting PMHNP Paul's opinion, that her opinion was not consistent with the longitudinal record, is insufficient. Although the ALJ need only provide germane reasons for rejecting the opinion of an "other source," the ALJ's reasons must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Here, the ALJ's reason was vague. Accordingly, the ALJ failed to provide legally sufficient reasons for rejecting PMHNP Paul's opinion.

III. *Remand*

The Ninth Circuit has developed a three-step process to determine whether a Social Security appeal should be remanded for further proceedings or for an immediate award of benefits. At step one, the reviewing court must determine whether the ALJ made a harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). At step two, the court reviews the record as a whole to determine whether the record is fully developed and free from conflicts, with all essential factual issues resolved. *Id.* Step two is the most important step because "the decision of whether

to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citation omitted). If the record is fully developed, the court proceeds to step three and considers "whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (citations omitted). If the ALJ would be required to make such a finding, the court has discretion to remand for an immediate award of benefits. *Id.* Even when all three steps are satisfied, however, the court may remand for further proceedings if the record as a whole "creates serious doubt as to whether a claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 408 (citation and internal quotation marks omitted).

Here, the ALJ harmfully erred in rejecting the medical opinions of Dr. Loudin, Dr. Williams, and PMHNP Paul. However, the record is not fully developed or free from conflicts. Although Dr. Loudin determined that plaintiff could stand and walk for a maximum of two hours per day and sit for a maximum of four hours per day, Dr. Williams concluded that plaintiff could stand and walk for four hours per day and sit for eight hours per day. Tr. 987, 1002. Moreover, while Dr. Williams concluded that plaintiff could only reach occasionally with each hand, Dr. Loudin did not identify any reaching limitations. Tr. 1003. Despite Dr. Loudin's conclusion that plaintiff would be absent from work three times per month due to his impairments, Dr. Williams did not indicate that plaintiff's impairments would cause him to be absent from work. Tr. 989. Accordingly, there are "significant factual conflicts in the record." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1104 (9th Cir. 2014). As such, a remand for proceedings is the appropriate remedy.

On remand, the ALJ shall: (1) accept Dr. Loudin's opinion and incorporate it into the RFC or provide legally sufficient reasons for its rejection; (2) accept Dr. Williams' opinion and

incorporate it into the RFC or provide legally sufficient reasons for its rejection; (3) accept PMHNP Paul's opinion or provide legally sufficient reasons for discounting it; (4) order an additional examination of plaintiff to evaluate the extent of his physical limitations; (5) order a mental health examination of plaintiff to determine the extent of his mental health limitations; and (6) conduct any additional proceedings as indicated by the results of the foregoing instructions.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings, consistent with this opinion.

IT IS SO ORDERED.

Dated this 21st day of June 2018.

_____
Ann Aiken
United States District Judge